Jimmie Lee **MOSIER**, Plaintiff,

v.

James **ROBINSON**, et al., Defendants.

Civ. No. 89–1018.

United States District Court,
W.D. Arkansas,
El Dorado Division.

Sept. 18, 1989.

---

**556**

Morgan E. Welch, North Little Rock, Ark., for plaintiff.

Michael Rainwater, Little Rock, Ark., for defendants Robinson and Harris.

Gary Draper, Crossett, Ark., for defendant Ashley County, Ark.

## ORDER

OREN HARRIS, Senior District Judge.

Before the Court is a motion for summary judgment filed by Ashley County, Arkansas. Plaintiff has responded to the motion, and both parties have filed supplemental responses with the Court.

Plaintiff brings this 42 U.S.C. § 1983 action against James Robinson and Rex Harris individually and in their official capacities as sheriff and deputy sheriff of Ashley County, respectively. Plaintiff additionally raises pendant state tort claims against the defendants.

In his complaint, plaintiff alleges that on September 21, 1988, he was taken into custody by defendant Harris and transported to the Ashley County jail. Plaintiff states that upon his arrival at the jail, Sheriff Robinson beat and choked him without provocation, that plaintiff offered no resistance, and that Harris made no attempt to stop the attack. Plaintiff further contends that at the time of the attack, Robinson was under the influence of alcohol, and that Robinson has acted in his official capacity as sheriff while under the influence of alcohol on previous occasions.

■ The present motion is filed by Ashley County, which, while not a named defendant, is the actual defendant in the "official capacity" portion of the lawsuit. *See Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). The county contends, and the Court agrees, that it is not subject to tort liability under Ark.Code Ann. § 21–9–301, and that it is not subject

to punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). The Court, therefore, will grant the county's motion for summary judgment insofar as it relates to the county's tort liability and liability for punitive damages.

■ The major contention in the county's motion is that the county is not subject to § 1983 liability merely because of an unconstitutional act of an official or employee. The principle that a local government cannot be held liable under § 1983 on a *respondeat superior* theory was established in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, the Court held that it is when execution of a government's policy or custom inflicts the injury that the government as an entity is responsible under § 1983. *Id.* at 694, 98 S.Ct. at 2037.

The county has submitted to the Court a copy of a two-page document entitled "Goals and Objectives," which contains the written policies of the Ashley County sheriff's office, and also a document entitled "Ashley County Jail Regulations." The county argues that if, in fact, the sheriff acted in the manner alleged by plaintiff, then the sheriff acted contrary to official policy, not in the execution thereof. In addition, the county contends that Harris's alleged failure to intervene in the attack on plaintiff was not the result of official policy. The county further states that plaintiff's complaint does not specifically indicate the policies allegedly carried out by Robinson and Harris. Finally, the county relies upon the recent decision in *Will v. Michigan Department of State Police,* — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), which held that neither states nor state officials acting in their official capacities are "persons" within the meaning of § 1983. The county argues that as a political subdivision of the state, it is entitled to immunity from § 1983 liability because it is not a "person" under the Act.

The Court is of the opinion that the county is a proper party to this action. Plaintiff

has submitted information, by means of depositions of Doug Thurman, a member of the Ashley County Quorum Court, and Wyatt Smith, a former chief deputy in the Ashley County sheriff's office, that Robinson has a history of performing his official duties while under the influence of alcohol. Robinson himself, in his own deposition, admits that he has driven his county-owned vehicle after drinking, and that he has appeared at crime scenes after drinking. The "Ashley County Jail Regulations" submitted to the Court provides that "[p]ersonnel found guilty of using alcohol on the job shall be terminated by the Sheriff." Robinson, however, modified this policy for himself, stating that he would not perform official duties if he had had more than two drinks. Robinson made the following pertinent statement in his deposition:

[I]t's my policy, my personal policy, not a county policy, that if I were to go home this afternoon, or any afternoon, and have more than two drinks, I will not, under any conditions, leave my house to answer a call or anything else, unless one of my deputies were to call me. If I were to get a call by phone, I call a deputy and have him to answer it, not saying that I'm intoxicated or impaired, but that is a policy that I have.

Q. So your policy is that you set a two-drink limit for yourself?

A. That's correct. Unless I'm out of town or somewhere. Then if I want to have ten, I might have ten. I'm on duty twenty-four hours a day and I have got to be capable of taking care of my business twenty-four hours a day, and I do that.

Robinson stated that if for some reason he were unable to perform his duties, the chief deputy would be in charge of the department. Robinson indicated that he did not notify the chief deputy in such instances, and that his having had more than two drinks would be such a circumstance that would place the chief deputy in charge.

Doug Thurman indicated that he was aware that Robinson had reported for duty under the influence of alcohol on previous occasions, including one instance where the sheriff ran his car into a ditch near a house where Thurman was visiting. Thurman is a member of the Ashley County Quorum Court, which is the legislative body of the county. Despite being aware of problems in the sheriff's office, Thurman never formally reported the problems to the Quorum Court. He did indicate that he had discussed some of the problems with at least two other court members informally, but no action was ever taken. There is further indication in Thurman's deposition that the county judge, who is the chief administrative officer of the county, had personally made threats to members of plaintiff's family after the alleged beating occurred.

While Robinson may not have violated any written policy of the county, his admitted conduct violated the written policy of his own department, and the record clearly shows that other county officials were aware of a pattern of behavior on the part of the sheriff which could certainly result in such an incident as is alleged here. Plaintiff alleges in his complaint that other officials were aware of previous occasions when Robinson performed official duties under the influence of alcohol, and the record that has been developed to this point supports this allegation. The allegation of a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy. *Powe v. City of Chicago,* 664 F.2d 639 (7th Cir.1981). The Court believes this is such a case, and finds that by failing to take action on the sheriff's alleged violations of sheriff's department policies occurring over a period of time, the Quorum Court impliedly assented to such violations, and that a county policy of condoning violations by the sheriff can be inferred.

As to the county's argument concerning *Will v. Michigan Department of State Police, supra,* the Court does not believe that the county shares the state's immunity under § 1983. Ark.Code Ann. § 14–14–102 defines a "county" as

... a political subdivision of the state for the more convenient administration of justice and *the exercise of local legisla-*

*tive authority* related to county affairs and is defined as a body politic and corporate operating within specified geographic limitations established by law. [Emphasis added.]

The Court notes that the statutes on county government are codified under Title 14 of the statutes, which deals with local government, rather than Title 25, which deals with state government. It appears, therefore, that county government in Arkansas is considered to be a form of local government, to which *Monell* specifically applies.

Upon review of the motion, the Court finds that the county's motion for summary judgment should be denied as to the allegations under § 1983.

IT IS THEREFORE CONSIDERED, ORDERED, AND ADJUDGED that the motion for summary judgment filed by defendant Ashley County be and the same is hereby granted insofar as it relates to tort liability and punitive damages on the part of the county, and that portions of plaintiff's complaint making such assertions as against the county be and the same are hereby dismissed.

IT IS FURTHER ORDERED that the motion for summary judgment filed by defendant Ashley County be and the same is hereby denied as to allegations raised under 42 U.S.C. § 1983.