# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3621

_____

| | | |
|---|---|---|
| Daniel Morris, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Crawford County, Arkansas; Bob Ross; | * | District of Arkansas. |
| John McAlister[1]; Larry G. Ruiz, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: May 14, 2002

Filed: August 12, 2002

_____

Before BOWMAN, LOKEN, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Daniel Morris appeals from an adverse grant of summary judgment on his deliberate indifference claim against Sheriff Bob Ross and Crawford County, Arkansas. For the reasons explained below, we affirm the district court's[2] judgment.

_____

[1]In their brief, defendants refer to "John McAllister," a usage we adopt herein.

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

I

Morris was arrested and charged with driving while intoxicated and disorderly conduct. He was transported to the Crawford County Detention Center for a breathalyser test, but he refused to take the test. After deputies placed him in a cell, Morris and his cell-mate began to yell and bang on the cell door. Four deputies responded to the clamor. Morris alleges the deputies entered the cell, grabbed him by his arms and legs, and repeatedly assaulted him as they dragged him to another cell. In the new cell, Morris alleges he was forced to the floor and struck in the face by Deputy John McAllister. Morris also alleges Deputy Larry Ruiz dropped his full weight behind his knee into Morris's torso as he lay on his back on the floor. This "knee drop" severed Morris's intestine.

Morris brought an array of claims under 42 U.S.C. § 1983 against Crawford County, Sheriff Ross, Deputy McAllister and Deputy Ruiz; some of the defendants were sued both in their individual and official capacities. Of principal importance to this appeal, Morris's complaint included a wrongful hiring claim that alleged Crawford County was liable for Sheriff Ross's decision to hire Deputy Ruiz in 2000.[3]

The district court granted summary judgment against Morris on the wrongful hiring claim. Although the district court believed Deputy Ruiz likely employed excessive force in executing the "knee drop," the court determined there was insufficient evidence from which Sheriff Ross could have discerned "an obvious risk that [Deputy Ruiz] would use excessive force if hired." The district court therefore concluded Sheriff Ross's decision to hire Deputy Ruiz was not deliberate

_____

[3]To be precise, Deputy Ruiz was *rehired* by Sheriff Ross in 2000. Sheriff Ross had initially hired Deputy Ruiz to work at the Detention Center in June 1997, but he later fired Deputy Ruiz in September 1997 for disobeying his supervisor, failing to answer his radio and leaving his post.

indifference, and, absent a showing of deliberate indifference on the part of Sheriff Ross, the court concluded Crawford County could not be held liable under § 1983.

The district court granted summary judgment on some, but not all, of the remaining claims in the action. Following entry of the court's order, Morris and the defendants took matters into their own hands, stipulating to a voluntary dismissal without prejudice of the outstanding claims. See Fed. R. Civ. P. 41(a)(1). The stipulation had the dual effect of resolving all claims against the defendants and bestowing us with appellate jurisdiction. See Chrysler Motors Corp. v. Thomas Auto Co., Inc., 939 F.2d 538, 540 (8th Cir. 1991).

Distilling this complicated procedural background to a palpable core, the present appeal requires us to evaluate three claims: the wrongful hiring claim against Crawford County, plus official and individual capacity claims against Sheriff Ross stemming from the same events. As the district court properly observed, the *official* capacity claim against Sheriff Ross is legally identical to the direct claim against Crawford County and must be so construed. Likewise, Morris insists that his *individual* capacity claim against Sheriff Ross pertains to the alleged wrongful hiring of Deputy Ruiz; in effect, Morris suggests a plaintiff may raise a deliberate indifference claim against a policymaker in his individual capacity based on a single hiring decision. We need not decide whether this breed of individual capacity claim exists because it is readily apparent that if it does, the claim would be identical to the official capacity claim. Thus, the three claims at issue in this appeal reduce to the single charge that Crawford County should be liable for Sheriff Ross's decision to hire Deputy Ruiz in 2000. Our analysis therefore proceeds as if but one claim remains.

II

We review the district court's summary judgment de novo, applying the same standard as the district court. <u>Jeseritz v. Potter</u>, 282 F.3d 542, 545 (8th Cir. 2002). Accordingly, we view the facts in the light most favorable to Morris and will affirm the summary judgment if there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Clark v. Kellogg Co.</u>, 205 F.3d 1079, 1082 (8th Cir. 2000).

III

Morris contends Sheriff Ross acted with deliberate indifference when he hired Deputy Ruiz. This claim requires us to determine whether Morris has demonstrated that Sheriff Ross's decision to hire Deputy Ruiz, with knowledge of his background, reflected a conscious disregard for a high risk that Deputy Ruiz would use excessive force in violation of Morris's federally protected rights. In making this determination, we seek guidance from the Supreme Court's decision in <u>Bd. of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397 (1997).

A.    **<u>Bryan County</u>**

In <u>Bryan County</u>, the Supreme Court addressed the issue of municipal liability under § 1983 for a single hiring decision made by a sheriff. Deputy Burns broke Jill Brown's knee caps when he forcibly removed her from the passenger's side of a truck driven by her husband. Brown filed a claim for damages under § 1983 against Bryan County, alleging Deputy Burns used excessive force while arresting her, and that Deputy Burns's employer, Bryan County, was liable for her injuries based on its sheriff's decision to hire Deputy Burns. A jury agreed: Deputy Burns was held liable for using excessive force and Bryan County was held liable because of Sheriff Moore's decision to hire Deputy Burns, who had a record of driving infractions and

had pleaded guilty to various driving-related and other misdemeanors, including assault and battery, resisting arrest, and public drunkenness. Id. at 401. The Fifth Circuit upheld the jury's verdict against Bryan County based on Sheriff Moore's decision to hire Deputy Burns in light of his rap sheet.

The Supreme Court, however, reversed the Fifth Circuit. Justice O'Connor observed that "[c]ases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause." Id. at 415. Concerned that municipal liability could very easily collapse into *respondeat superior* liability in the context of a single, facially lawful hiring decision, the Court adopted stringent culpability and causation requirements, noting that "[a] showing of simple or even heightened negligence will not suffice." Id. at 407.

The Court demanded that courts "carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Id. at 410. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" Id. at 411. The Court proceeded to explain that

> a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

Id. at 412. The Court ultimately concluded there was insufficient evidence on which a jury could base a finding that Sheriff Moore's decision to hire Deputy Burns

-5-

reflected conscious disregard of an obvious risk that Deputy Burns would use excessive force. Id. at 415. Although Sheriff Moore's conduct may have "reflect[ed] indifference to [the officer's] record, . . . what is required is deliberate indifference to a plaintiff's constitutional right." Id. at 414-15.

Bryan County teaches us that liability may not be imposed unless a plaintiff directly links the applicant's background with the risk that, if hired, that applicant would use excessive force. In other words, a plaintiff must show that the hiring decision and the plaintiff's alleged constitutional injury are closely connected—an applicant's background is that causal link. What then must an applicant's background reveal for a plaintiff's alleged injury to be the plainly obvious consequence of the hiring decision?

B.    Post **Bryan County** Cases

Courts strictly adhere to Bryan County's directive that "[t]he connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." Id. at 412. The prior complaints in an applicant's background must be nearly identical to the type of officer misconduct that caused the constitutional deprivation allegedly suffered by a plaintiff. Courts routinely reject attempts to satisfy Bryan County's causal connection requirement where none of the prior complaints in an applicant's background were of the same or similar type of officer misconduct that caused the plaintiff's injury.

Aguillard v. McGowen, 207 F.3d 226 (5th Cir. 2000), involved an officer, Deputy McGowen, who shot and killed Susan Harrison White while on duty. White's estate brought a wrongful death action under § 1983 against the County based on its decision to hire Deputy McGowen. Deputy McGowen's record showed that, *inter alia*, he had threatened the mother of a juvenile with arrest, and had assaulted and pistol-whipped a teenage boy. Deputy McGowen, however, was neither arrested nor

convicted of the alleged assault and pistol-whipping incident. His informal disciplinary record included infractions for using police radio for broadcasting personal messages and for refusing to convey information to one party in a car accident. The Fifth Circuit reversed the district court's judgment, which upheld the jury's verdict against the County, because the requisite causal connection was lacking; Deputy McGowen's record did not show "one shred of solid evidence *foreshadowing* McGowen's tragic killing of White." Id. at 230 (emphasis added). Aguillard explained "McGowen had never wrongfully shot anyone before, nor did his record reveal him to be likely to use excessive force in general or possess a trigger-happy nature in particular" and concluded that "[w]hile the County may have been negligent in its employment decision, the magnitude of its error does not reach constitutional cognizance." Id.

Gros v. City of Grand Prairie, 209 F.3d 431 (5th Cir. 2000), involved a police officer who allegedly sexually assaulted two women during traffic stops. At the time of that officer's hire, his file contained statements regarding aggressiveness, letters of reprimand and complaints for being overbearing and abusive during a prior traffic stop. The Fifth Circuit reversed the district court's judgment, concluding the police chief was not deliberately indifferent in hiring the officer, because the requisite causal connection was absent. Id. at 435. The Fifth Circuit explained the officer "had never sexually assaulted, sexually harassed, falsely arrested, improperly searched or seized, or used excessive force against a third party." Id. While the officer's records suggested the police chief may have been negligent in hiring him, the Fifth Circuit determined the officer's records did not provide sufficient evidence of deliberate indifference to a third party's constitutional rights. Id.

Barney v. Pulsipher, 143 F.3d 1299 (10th Cir. 1998), involved a male correctional guard, Gerald Pulsipher, who allegedly sexually assaulted several female inmates. Pulsipher had been arrested at age seventeen for possession of alcohol and had several speeding tickets. The Tenth Circuit explained there was nothing in

Pulsipher's background that would have indicated he would have committed sexual assault on the inmates.  Id. at 1309.  In other words, the plaintiffs had failed to satisfy the strong causal connection required by Bryan County.

Riddick v. Sch. Bd. of the City of Portsmouth, 238 F.3d 518 (4th Cir. 2000), involved a male coach who secretly videotaped members of the female high school track team while undressing.  Three years prior, in 1989, the coach had been investigated for openly filming fully-clothed female students.  Although the coach had been investigated for that incident, the Fourth Circuit concluded summary judgment in favor of the School Board was appropriate because it was not plainly obvious the coach would secretly videotape other students while undressing nearly three years later.  Id. at 525.  "Put simply, the causal connection between the 1989 incident and the alleged constitutional deprivation is simply too attenuated to impose municipal liability on the Board."  Id. at 526.

These cases also reveal that municipalities are not necessarily liable even when an applicant's background contains complaints of physical violence, including acts of aggression and assault.  For example, in Aguillard, although Deputy McGowen's record included complaints of assault and threatening behavior, it did not reveal that he had ever wrongfully shot anyone before or used excessive force.  In Gros, although the officer's record revealed that he was aggressive and that he had been abusive during a previous traffic stop, it did not reveal that he had ever sexually assaulted, sexually harassed, falsely arrested, improperly searched or used excessive force.  Courts have determined that such complaints must be closely aligned with a plaintiff's alleged injury, and absent that close nexus, there can be no municipal liability based on a single hiring decision.  In sum, to avoid summary judgment, a plaintiff must point to prior complaints in an applicant's background that are nearly identical to the type of misconduct that causes the constitutional deprivation allegedly suffered by the plaintiff.  This is a rigorous test to be sure.

**C.    Application of <u>Bryan County</u>**

Has Morris presented evidence sufficient to create a genuine issue of material fact that the plainly obvious consequence of rehiring Deputy Ruiz would be his use of excessive force against an inmate?  We do not believe he has.

Morris claims Deputy Ruiz's record contains a violent felony conviction.  As noted by the district court, however, the record does not reveal that the conviction was for a violent felony offense.  <u>See</u> Appellant's App. 264.  During oral argument, moreover, we learned that, after Deputy Ruiz paid a fine, it appears the conviction was reduced to a misdemeanor, and was ultimately expunged from his record.

Deputy Ruiz's background does not reveal that he knee-dropped an inmate (or anyone for that matter), nor does it reveal a single complaint of excessive force. Deputy Ruiz's record includes slapping an inmate at the Sebastian County Detention Center in 1996; mishandling inmates' money and property; "mouthing off" to two fellow deputies at Sebastian County and "invit[ing] [one of them] to the gym any day, any time . . . to take care of it" in 1997; disobeying a nurse during which the nurse overheard Deputy Ruiz say "he was going to knock that bitch out"; and acting insubordinate at work, disobeying orders, cursing other employees, failing to adhere to rules (i.e., leaving his post with no officer on duty and failing to answer his radio when a supervisor attempted to contact him).  There are also accusations by Deputy Ruiz's ex-wife that, in 1997, he ran her off the road, tore a necklace off her neck, and pushed her, as well as accusations by Deputy Ruiz's girlfriend that, in 1999, he grabbed her arm and threw her, and threatened to assault her.

Morris emphasizes Deputy Ruiz's past incidents of domestic violence, arguing such acts portend violence in the workplace.  Both Deputy Ruiz's ex-wife and girlfriend obtained *ex parte* protective orders against him, but none of their claims were ever substantiated.  Morris relies on <u>Parrish v. Luckie</u>, 963 F.2d 201 (8th Cir.

1992), for the proposition that violent or abusive behavior of any kind indicates a strong potential for violent behavior against persons in custody. We need not decide whether Parrish stands for such a proposition, however, because even if it did, Bryan County implicitly rejected such an argument in the context of municipal liability based on a single hiring decision. The plaintiff in Bryan County retained an expert witness who testified that Deputy Burns's arrest record showed "a blatant disregard for the law and problems that may show themselves in abusing the public or using excessive force." 520 U.S. at 429. In fact, Bryan County's own expert opined that Deputy Burns's record should have caused concern. Id. Despite this evidence, the Court concluded the plaintiff had not demonstrated that Sheriff Moore's decision to hire Deputy Burns constituted deliberate indifference. Id. at 415.

Morris also stresses the jail administrator's statement to Sheriff Ross that Deputy Ruiz would cause trouble if hired, and relies on an expert witness who testified that violent or abusive behavior of any kind indicates a strong potential for violent behavior against persons in custody. The jail administrator made the statement to Sheriff Ross in 1997, when Deputy Ruiz was first hired to work at the Crawford County Detention Center. Deputy Ruiz did cause trouble and was fired, but not because he was violent with inmates or displayed any violent propensity toward inmates; he was fired for insubordination, failing to answer his radio and leaving his post. With respect to the expert testimony, as noted above, Bryan County considered similar evidence and concluded it did not carry the day.

Morris attempts to distinguish his case from Bryan County, arguing Deputy Ruiz's record reveals several separate instances of violence, whereas Deputy Burns's record revealed only one incident that produced several violent charges. But the facts of record do not substantiate Morris's distinction. The 1996 slapping of an inmate by Deputy Ruiz is the only violent act in his record. It is true that *ex parte* protective orders were obtained against Deputy Ruiz by both his ex-wife and girlfriend, but they are unsubstantiated accusations. More importantly, it is the nature of the prior

complaints with which we are concerned. We do not believe the complaints mentioned above satisfy Bryan County's requirement of a "strong" causal connection between Deputy Ruiz's background and the specific constitutional violation alleged by Morris. We agree with the district court's assessment that "[Deputy] Ruiz's record may have made him a poor candidate for a position as a detention center deputy, but it would not have lead [sic] a reasonable supervisor to conclude that there was an obvious risk that he would use excessive force if hired." See Appellant's App. 265.

IV

We believe Morris has failed to present evidence sufficient to create a genuine issue of material fact that Sheriff Ross acted with deliberate indifference when he hired Deputy Ruiz. Accordingly, the district court's summary judgment in favor of Sheriff Ross and Crawford County is affirmed in its entirety.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-