2009 Ark. 634

Don GENTRY, County Judge; and
Phillips County, Arkansas,
Appellants,

v.

Christine ROBINSON, Appellee.

No. 08–1452.

Supreme Court of Arkansas.

Dec. 17, 2009.

Newell & Hargraves, by: C. Burt Newell, Hot Springs, for appellants.

Don R. Etherly, Helena, WH, for appellee.

ELANA CUNNINGHAM WILLS, Justice.

This is an interlocutory appeal from an order of the Phillips County Circuit Court denying appellant Don Gentry's motion for summary judgment on immunity grounds. Because we conclude that the summary-judgment motion made a prima facie case and was not met with proof sufficient to raise a disputed question of material fact, we reverse and remand.

Gentry is the elected County Judge of Phillips County. On January 30, 2003, appellee Christine Robinson filed a complaint against Gentry and Phillips County, alleging that she had been raped on June 10, 2002, by a jailer, Jimmy Ward, while she was an inmate at the Phillips County Jail.[1] Her complaint contended that Ward's actions violated her rights protected by the Arkansas Civil Rights Act, Arkansas Code Annotated section 16–123–105 (Supp. 2001). She further maintained that the County owed a duty to protect her while she was incarcerated in a County facility, and that the County "failed to properly screen and hire employees of its jail [and] failed to conduct a proper background check of Jimmy Ward, which would have revealed he had engaged in similar acts in the past." She further alleged that Ward had been negligently hired and retained by Phillips County.

Gentry and the County answered on February 20, 2003, asserting that Robinson's complaint failed to state a cause of action upon which relief could be granted. In addition, the answer stated that neither Gentry nor the County had engaged in any type of conduct that violated Robinson's civil rights, nor was there a policy, practice, or custom of the County that resulted in Robinson's constitutional rights being violated. The answer also set out the affirmative defense of sovereign immunity.

Gentry filed a motion for summary judgment on October 12, 2004. In this motion, Gentry asserted that Robinson's basis for liability was that Ward's conduct violated her civil rights and constituted a common law tort under Arkansas law, that the County failed to properly screen Ward, and that a proper background check would have revealed that Ward had engaged in similar acts in the past. Arguing that the pleadings and discovery documents, including deposition transcripts, revealed that there were no material facts in dispute, Gentry contended that Robinson's complaint should be "dismissed as a matter of law since there is no basis for liability as asserted by the plaintiff in her complaint based upon the undisputed facts in the record."

In support of his summary-judgment motion, Gentry attached transcripts of depositions from the plaintiff, Robinson; Sheriff T.L. Green; and jail administrator Oscar Hoskins. Both Green and Hoskins averred in their depositions that it was the County's policy to conduct background checks on all potential employees. Green

---

1. Ward, who was not named as a defendant in Robinson's suit, was never prosecuted for rape.

pointed to a printout from the Arkansas Crime Information Center (ACIC) that showed that Ward had no convictions or traffic violations.

In a brief accompanying his summary-judgment motion, Gentry argued that, at all times relevant to the suit, it was the policy of the Phillips County Sheriff's Office to do background checks on new employees, including jail staff. He also asserted that it was the jail's policy to never allow a male staff member to have contact with a female inmate unless there was a female matron present. Citing *Ware v. Jackson County, Missouri,* 150 F.3d 873 (8th Cir.1998), Gentry further argued that the County's liability in a civil-rights action could only be established by showing that Robinson's rights were violated by an action pursuant to official municipal policy or misconduct so pervasive among non-policy-making County employees "as to constitute a custom or usage with the force of law."

Alternatively, Gentry argued that "custom" or "policy" could be demonstrated by 1) the existence of a continuing, persistent pattern of unconstitutional misconduct by government employees; 2) deliberate indifference to or a tacit authorization of such conduct ⌊₄by the governmental entity's policymaking officials after notice of that misconduct; and 3) proof that the custom or policy was the moving force behind the plaintiff's constitutional injury. *See Ware v. Jackson County, supra.* He urged that the only evidence before the court showed that it was the county's policy to have a female matron present whenever there was a male among the female prison population, and that the proof showed that there had been no similar incident in the last thirteen years. Moreover, citing *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Gentry argued that there could be no official-capacity liability based upon theories of respondeat superior.

Gentry also noted that Robinson's claims of constitutional violations stemmed from the County's alleged negligent hiring of Ward. Pointing out that the County enjoyed statutory immunity from tort actions under Arkansas Code Annotated section 21–9–301 (Supp.2001), Gentry urged that no tort action—such as Robinson's negligent-hiring claim—could lie against the County because of the actions of its agents or employees. Gentry argued that, to the extent that this "negligent hiring" could be considered a constitutional violation that could be maintained under the Civil Rights Act, then Robinson could not prevail "because Phillips County had a policy of performing background checks on applicants such as Jimmy Ward and, in fact, did a background check prior to his hire." Therefore, Gentry concluded that Robinson had failed to raise a genuine issue of material fact concerning the existence of a pattern of unconstitutional misconduct or deliberate indifference to or tacit authorization of such conduct by the County.

⌊₅Robinson responded to Gentry's motion for summary judgment on November 12, 2004, stating that there were "material facts that are in dispute, and plaintiff's complaint should not be dismissed." In her accompanying brief, she pointed to Hoskin's deposition testimony that he did not recall the actual hiring of Jimmy Ward; further, although he said that the general process involved gathering the criminal records of an applicant to determine if he or she was fit to work in the jail, Hoskins said that he never reviewed National Crime Information Center (NCIC) records for any potential employee for the jail. Robinson also pointed to Green's deposition testimony, wherein he stated that he never participated in criminal back-

ground checks for jail employees.[2] Further, she argued that, if Hoskins or Green had conducted a criminal background check, they would have discovered Ward's "extensive criminal history." Robinson attached an affidavit for warrant of arrest completed by a sixteen-year-old girl who alleged that Ward had given her an unwanted kiss and hug in 1998. Based on the depositions, Robinson alleged that it was "clear that Phillips County either had no policies in place to protect the plaintiff or it chose to ignore or disregard the existing policies." Robinson urged that there were disputed issues of fact that precluded granting Gentry's motion for summary judgment.

Gentry subsequently filed a supplemental brief in support of his motion for summary judgment, reiterating the argument that he and the County enjoyed immunity from suit. In support of this argument, Gentry cited *City of Fayetteville v. Romine*, 373 Ark. 318, 284 S.W.3d 10 (2008), in which this court held that, where a city employee had been sued in his official capacity in a civil-rights action, he was immune from suit and should have had his summary-judgment motion granted.

The circuit court held a hearing on Gentry's motion for summary judgment on November 13, 2008. At that time, Gentry argued that Robinson's suit, purportedly against Gentry in his official capacity, was nothing more than a negligence action, which was barred by the statutory tort immunity found in section 21-9-301. Robinson responded that she had stated a claim under the Arkansas Civil Rights Act

because the "policy and practice" of the County, as established by Hoskins's and Green's deposition testimony, was not to do a background check on job applicants. Gentry responded that, while the complaint stated that Robinson's action was nominally brought under the Civil Rights Act, her claim was nonetheless that there had been a "violation for negligence causing a violation of civil rights," and under section 21-9-301, the County was immune.

After hearing arguments of counsel, the circuit court found that it was "clear that the 21-9-301 tort immunity is applicable." Accordingly, the court granted Gentry's motion for summary judgment and dismissed Robinson's negligence claims "as far as the [tort] liability is concerned." However, the court went on to note that Paragraphs Four, Seven, and Twelve of the complaint "made allegations of a violation of the Civil Rights Act." In addition, the court cited *Mosier v. Robinson*, 722 F.Supp. 555 (W.D.Ark.1989), a case annotated in the case notes following section 21-9-301, as holding that the County does not share the State's immunity under 42 U.S.C. § 1983. The court also stated that state courts can use federal case law to construe our Civil Rights Act. Thus, the court denied Gentry's summary-judgment motion regarding the Civil Rights Act claims.[3] The court entered an order to that effect on November 13, 2008, and Gentry filed a notice of appeal the next day.

In his sole point on appeal, Gentry argues that the facts as pled in this case do not rise to the level of a constitutional

---

**2.** Green's actual testimony was that it was the county's policy to perform a background check, including a criminal history check, but that he left the actual performance of that investigation up to the jail administrator, who would make arrangements with the Helena Police Department.

**3.** With regard to the negligence claims, the order stated that the motion for summary judgment was "granted regarding Arkansas Code Annotated [section] 21-9-301—tort liability, excepting coverage by liability insurance."

violation, and he was thus entitled to summary judgment as a matter of law. He argues that Robinson's complaint was brought under the Arkansas Civil Rights Act, and notes that the Act itself provides that, in construing its provisions, this court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act, 42 U.S.C. § 1983. *See* Ark. Code Ann. § 16–123–105(c) (Repl.2006).

As he urged below, Gentry reiterates that a plaintiff may establish county liability under § 1983 by proving that her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the county "as to constitute a custom or usage with the force of law." *Ware v. Jackson County, Missouri,* 150 F.3d 873, 880 (8th Cir.1998) (quoting *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Noting that Robinson alleged that her constitutional rights were violated due to the hiring of Jimmy Ward, Gentry argues that Robinson was thus required to allege or show that the County knew of problems in Ward's background and hired him nonetheless. Because she failed to do so, Gentry contends that Robinson failed to demonstrate that she had a sustainable cause of action.

Robinson, on the other hand, argues that her complaint clearly set out facts sufficient to demonstrate that her constitutional rights were violated, contending that it was "undisputed" that no one conducted a background check on Ward and that the County "operated under an unwritten policy of simply reviewing applicants and hiring them." She further states that her complaint "utilized key language from cases relied upon by this court and thus states sufficient facts," and asserts, without citation to authority, that "there is no immunity for the defendants in this cause

of action for violations under the Arkansas Civil Rights Act."

There is an initial question as to the proper standard of review in this case. In ruling on Gentry's motion, the circuit court looked to the specific facts alleged in the complaint; moreover, portions of Gentry's arguments on appeal assert that Robinson's complaint failed to state a cause of action, and Robinson's argument is directed almost entirely to whether her complaint stated sufficient facts to show a cause of action. Such claims are ordinarily raised in a case in which the circuit court has decided a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(6). This case, however, was clearly decided on the basis of Gentry's summary-judgment₉ motion; no Rule 12(b)(6) motion was filed. The circuit court had before it "pleadings, depositions ... [and] affidavits," *see* Ark. R. Civ. P. 56(c)(2), and those matters were not excluded by the court in rendering its decision, as evidenced by the statement in the order that it had considered the "arguments of counsel, briefs submitted, and other things before the court." Our review is from this order; therefore, we must determine whether summary judgment was properly denied in this case.

As a general rule, the denial of a motion for summary judgment is neither reviewable nor appealable. *See City of Fayetteville v. Romine,* 373 Ark. 318, 284 S.W.3d 10 (2008); *Ark. River Educ. Servs. v. Modacure,* 371 Ark. 466, 267 S.W.3d 595 (2007). However, that general rule does not apply where the refusal to grant a summary-judgment motion has the effect of determining that the appellant is not entitled to immunity from suit, as the right of immunity from suit is effectively lost if a case is permitted to go to trial. *See Romine, supra.* This court has held that the issue of whether a party is immune from suit is purely a question of law, *see Smith*

*v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005), and is reviewed de novo. *Romine, supra.*

▓ Of course, our court has repeatedly held that summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See Williams v. Ark. Dep't of Corr.*, 362 Ark. 134, 207 S.W.3d 519 (2005) (abrogated on other grounds by *Grayson v. Ross*, 369 Ark. 241, 253 S.W.3d 428 (2007)); *Anglin v. Johnson Reg'l Med. Ctr.*, 375 Ark. 10, 289 S.W.3d 28 (2008). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Williams, supra.* On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary judgment is not proper where the evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Id.*

▓ The Eighth Circuit has added that courts deciding questions of immunity must also recognize that whether summary judgment on such grounds is appropriate from a particular set of facts is a question of law. *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir.2000).[4] The United States Supreme Court has noted that, although the determination of whether there is a genuine issue of material fact at summary judgment is a question of law, "it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The denial of summary judgment on the grounds of qualified or statutory immunity may be reviewed on interlocutory appeal when the issue presented "is purely a legal one," *see Pace*, 201 F.3d at 1052, of whether the facts alleged or shown establish a claim of a constitutional violation. *See Krout v. Goemmer*, 583 F.3d 557 (8th Cir.2009).

▓ As discussed more fully below, in the context of an alleged civil-rights violation stemming from a municipal government's purported negligent hiring of an employee, a plaintiff must show that the municipality acted with deliberate indifference.[5] *See Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Thus, as a precursor to the immunity analysis, this court must first find that Robinson alleged facts or met proof with proof sufficient to raise a fact question concerning a constitutional violation—that is, that the County acted with deliberate indifference to her constitutional rights. *See Williams, supra.*

Deliberate indifference has been defined as "something more than gross negligence, yet less than acting with the purpose to induce harm." *Grayson*, 369 Ark. at 245,

---

4. At issue in *Pace* was a question of qualified immunity for a municipal police officer in his individual capacity, while the present case presents a question of statutory immunity for a county official acting in his official capacity, but the preliminary question is much the same.

5. This court held in *Grayson v. Ross*, 369 Ark. 241, 253 S.W.3d 428 (2007), that the deliberate-indifference analysis is applied to situations involving allegations of constitutional violations raised by pretrial detainees. Robinson was being held in jail on a petition to revoke her probation.

253 S.W.3d at 431 (citing *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). In the context of an alleged civil-rights violation stemming from a municipal government's purported negligent hiring of an employee, the Supreme Court has explained that a plaintiff must

> demonstrate that through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. at 404, 117 S.Ct. 1382 (emphasis in original).

In *Bryan County,* the plaintiff, Brown, was injured when a deputy sheriff, Stacy Burns, pulled her roughly from a car during a traffic stop and threw her to the ground, severely injuring her knees. *Bryan County,* 520 U.S. at 400–01, 117 S.Ct. 1382. Brown filed a lawsuit against Burns, the Bryan County Sheriff, and Bryan County pursuant to 42 U.S.C. § 1983, alleging, among other things, that the County was liable for Burns's use of force because it failed to adequately review his background before hiring him; she argued that, had the County done a thorough background check, it would have discovered his history of various misdemeanors, including assault and battery, resisting arrest, and public drunkenness. *Id.* at 401, 117 S.Ct. 1382. At the end of a jury trial, the County moved for judgment as a matter of law, contending that a single hiring decision by a municipal policymaker could not give rise to municipal liability under § 1983. The district court denied the County's motion, and the Fifth Circuit affirmed, concluding that the County could

be found liable based on the sheriff's decision to hire Burns. *Id.* at 401–02, 117 S.Ct. 1382.

The Supreme Court reversed the court of appeals and the district court. In its analysis, the Supreme Court first reiterated the rules that a municipality may not be held liable under § 1983 solely because it hires a tortfeasor, *id.* at 403, 117 S.Ct. 1382 (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), nor may municipalities be held liable under a theory of respondeat superior. *Id.* (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Instead, a plaintiff seeking to have a municipality found liable under § 1983 must identify a municipal "policy" or "custom" that caused the injury. *Id.* (citing *Monell, supra*). The question presented in the *Bryan County* case was whether a single act of hiring a particular individual can constitute a "policy" that triggers municipal liability under § 1983.

The Court went on to note the difference between "failure to train" claims and "improper hiring" claims. In a situation where a municipality has a training program for numerous employees that, over a period of time, results in constitutional violations, municipalities could "be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action— the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* at 407, 117 S.Ct. 1382 (citing *Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). In addition, a pattern of tortious conduct by municipal employees "may tend to show that the lack of proper training, rather than a one-time negligent adminis-

tration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 408, 117 S.Ct. 1382 (citing *Canton,* 489 U.S. at 390–91, 109 S.Ct. 1197). In such circumstances, a municipality's failure to properly train its employees could constitute a pattern or policy that can rise to the level of deliberate indifference necessary to hold a municipality liable for violating an individual's constitutional rights. *Id.*

Where, however, the claim is that a municipality made an individual hiring decision, the burden on the plaintiff is much higher. The Court pointed out that when a claim is premised on the "inadequacy of an official's review of a prospective applicant's record, ... there is a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself." *Id.* at 410, 117 S.Ct. 1382. The Court continued:

> Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policy maker's inadequate decision and the particular injury alleged.

*Id.*

The Court reiterated that "deliberate indifference" is a "stringent standard of fault" that requires proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.* As opposed to the risk posed by a programmatic omission in a training program, the risk "from a single instance of inadequate screening of an applicant's background is not 'obvious'

in the abstract; rather, it depends on the background of the applicant." *Id.* A generalized risk that could arise from a poor background check might make it likely that an applicant may violate a plaintiff's constitutional rights; however, such a likelihood does not, standing alone, "give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Id.* at 411, 117 S.Ct. 1382. The Court continued:

> [A] showing of an instance of inadequate screening is not enough to establish "deliberate indifference." In layman's terms, inadequate screening of an applicant's record may reflect "indifference" to the applicant's background. For purposes of a legal inquiry into municipal liability under § 1983, however, that is not the relevant "indifference." *A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right* can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Id.* (emphasis added).

Thus, a finding of culpability on the part of the municipality cannot depend solely on the possibility or probability that one poorly screened employee will cause a third party a constitutional injury. "Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of

the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412, 117 S.Ct. 1382 (emphasis in original).

 Applying these principles to the facts of the case, the *Bryan County* Court concluded that, while Burns's record contained "various misdemeanor infractions,"[6] *id.* at 413, 117 S.Ct: 1382, a review of his record would not necessarily have caused the County to foresee that Burns's use of excessive force in the arrest of Brown would have been a plainly obvious consequence of the ⌐16hiring decision. Accordingly, the County's failure to thoroughly check Burns's background could not constitute "deliberate indifference" to Brown's constitutional right to be free from the use of excessive force. *Id.* at 414, 117 S.Ct. 1382.

The Eighth Circuit Court of Appeals reached a similar conclusion in *Morris v. Crawford County,* 299 F.3d 919 (8th Cir. 2002). In that case, appellant Morris had been arrested and charged with driving while intoxicated and disorderly conduct. After being put in a jail cell, he began to bang on the door. Morris alleged that the deputies who responded to his uproar assaulted him; one of those deputies, Larry Ruiz, "knee-dropped" Morris so hard that Morris's intestine was severed. Morris brought a number of § 1983 claims against Crawford County, the sheriff, and the deputies, including a wrongful-hiring claim that alleged Crawford County was liable for the sheriff's decision to hire Ruiz in 2000. *Morris,* 299 F.3d at 921.

The federal district court granted summary judgment on the wrongful-hiring claim, concluding that there was insufficient evidence from which the sheriff could have discerned an "obvious risk" that Ruiz would use excessive force if hired. *Id.* Therefore, the district court found that the decision to hire Ruiz did not constitute the kind of "deliberate indifference" necessary to support a § 1983 claim for wrongful hiring. *Id.* On appeal, the Eighth Circuit considered whether Morris demonstrated that the sheriff's decision to hire Ruiz, "with knowledge of his background, reflected a conscious disregard for a high risk that ⌐17Deputy Ruiz would use excessive force in violation of Morris's federally protected rights." *Id.* at 922.

Citing the Supreme Court's decision in *Bryan County, supra,* the Eighth Circuit stated that

> liability may not be imposed unless a plaintiff directly links the applicant's background with the risk that, if hired, that applicant would use excessive force. In other words, a plaintiff must show that the hiring decision and the plaintiff's alleged constitutional injury are closely connected—an applicant's background is that causal link. What then must an applicant's background reveal for a plaintiff's alleged injury to be the plainly obvious consequence of the hiring decision?

*Id.* at 923. After discussing and analyzing several other cases from other courts of appeals, the Eighth Circuit concluded that municipalities are not necessarily liable even when an applicant's background contains complaints of physical violence. *Id.* at 923–24 (citing *Aguillard v. McGowen,* 207 F.3d 226 (5th Cir.2000); *Gros v. City of Grand Prairie,* 209 F.3d 431 (5th Cir. 2000); *Barney v. Pulsipher,* 143 F.3d 1299 (10th Cir.1998); and *Riddick v. Sch. Bd. of*

6. Those infractions included assault and battery, resisting arrest, and public drunkenness (all of which arose from a single fight on a college campus where Burns was a student); various driving-related offenses; and being in physical control of a vehicle while intoxicated. *Id.* at 413 n. 1, 117 S.Ct. 1382.

the City of Portsmouth, 238 F.3d 518 (4th Cir.2000)). Rather, the court held that such complaints must be closely aligned with a plaintiff's alleged injury, and absent that close nexus, there can be no municipal liability based on a single hiring decision. In sum, *to avoid summary judgment, a plaintiff must point to prior complaints in an applicant's background that are nearly identical to the type of misconduct that causes the constitutional deprivation allegedly suffered by the plaintiff.* This is a rigorous test to be sure.

*Id.* at 924 (emphasis added).

Applying the *Bryan County* analysis, the Eighth Circuit noted that Ruiz's background did not reveal that he had ever used excessive force against an inmate. There had been unsubstantiated allegations of domestic violence in Ruiz's past and one charge that he had slapped an inmate in 1996. Nonetheless, the court concluded that those incidents did not satisfy *Bryan County*'s requirement of a strong causal connection between Ruiz's background and the specific constitutional violation alleged by Morris. Accordingly, the Eighth Circuit affirmed the district court's granting of summary judgment in favor of Crawford County. *Id.* at 925–26.

In the instant case, County Judge Gentry's motion for summary judgment asserted that an ACIC background check on Jimmy Ward revealed that Ward had no criminal charges or convictions on his record. In response, Robinson asserted that, had the jail administrator or sheriff conducted a "proper" criminal background check, they would have discovered that Ward had "an extensive criminal history" that included "charges of terroristic threatening, disorderly conduct, assault, battery, and harassment," including a "charge" that Ward had made "unwanted sexual advances against a sixteen year old

female" two years before Ward was hired by the jail. The only documentation supporting Robinson's allegations, however, was an affidavit for warrant of arrest, dated June 22, 1998, in which a sixteen-year-old girl alleged that Ward had "wrapped his arms around [her] tightly and kissed [her] on the mouth unwantingly [sic] by her." Robinson submitted no proof that Ward was ever actually arrested in conjunction with that incident, nor did she offer proof of any other actual criminal charges of or arrests for terroristic threatening, disorderly conduct, assault, battery, or harassment.

Thus, Robinson first failed to meet proof with proof. Where a movant makes a prima facie case for summary judgment, the other party must "discard the cloak of formal allegations and meet proof with proof by showing that an issue of fact exists." *Barre v. Hoffman,* 2009 Ark. 373, 326 S.W.3d 415 (quoting *Hodges v. Huckabee,* 338 Ark. 454, 464, 995 S.W.2d 341, 348 (1999)). Here, Gentry's summary-judgment motion incorporated Green's deposition testimony indicating that the ACIC report showed that Ward did not have a criminal background that would have rendered him unfit for employment at the county jail. In response, Robinson offered only unsupported allegations that Ward did, in fact, have a criminal record; the affidavit for warrant of arrest that she attached to her response, however, does not demonstrate that Ward was ever, in fact, arrested, charged, or convicted of sexually harassing a sixteen-year-old girl.

Additionally, as discussed above, in order to find that liability arises from a municipal entity's hiring decision, the plaintiff must offer proof that directly links the job applicant's background with the risk that, if hired, that applicant would violate the plaintiff's civil rights and must show that the hiring decision and the

plaintiff's alleged constitutional injury are closely connected. *See Morris v. Crawford County, supra.* The Eighth Circuit has held that a plaintiff must point to "prior complaints in an applicant's background that are nearly identical to the type of misconduct" alleged to have caused the violation of the plaintiff's constitutional rights. *Morris,* 299 F.3d at 924.

[20]In her complaint, Robinson alleged that Ward raped her. Her only proof offered in response to the motion for summary judgment, however, was that an affidavit for warrant of arrest had been issued against Ward, alleging that he had hugged and kissed a sixteen-year-old girl. An unwanted hug and kiss are not "nearly identical" to the allegations made by Robinson against Ward—that he "put his hand over her mouth and engaged in sexual contact with her for up to fifteen minutes." Accordingly, Robinson has failed to allege or show evidence to create a factual question as to whether the "plainly obvious consequence" of the County's hiring of Ward would have been that he would rape Robinson, *see Bryan County,* 520 U.S. at 411, 117 S.Ct. 1382, and that the County acted with deliberate indifference in hiring Ward. That is, Robinson failed to assert facts or present evidence sufficient to raise a fact question as to whether there was a constitutional violation. *See Williams, supra.* Therefore, the circuit court should have granted summary judgment on Robinson's civil-rights claims as well as her tort claims against the County.

Gentry also argues on appeal that Robinson failed to create a question of fact regarding the County's policy or custom, and thus, the circuit court erred in denying summary judgment on this issue as well. Gentry attached Hoskins's and Green's deposition testimony to his motion for summary judgment. Hoskins stated that it was the County's policy to conduct background checks on all applicants for posi-tions at the jail in order to ensure that they had no felony convictions. Green stated that it was the policy of the Phillips County Sheriff's Department to "never hire anyone to work at the jail that had a felony [21]conviction," and he referenced the May 31, 2000 ACIC report that showed Ward had no convictions. Robinson offered nothing in response except her bare allegation, unsupported by affidavit, deposition, or other evidence, that the County had "no policies in place to protect the plaintiff or it chose to ignore or disregard the existing policies."

A plaintiff may establish county liability under § 1983 by showing that her constitutional rights were violated by an action pursuant to official municipal policy or by misconduct so pervasive among employees of the county as to constitute a custom or usage with the force of law. *Ware v. Jackson County, Missouri,* 150 F.3d 873 (8th Cir.1998). A "custom or usage" is demonstrated by

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Ware,* 150 F.3d at 882. "Liability for an unconstitutional custom or usage, however, cannot arise from a single act." *McGautha v. Jackson County, Missouri,* 36 F.3d 53, 57 (8th Cir.1994) (citing *Wedemeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir. 1991) ("a single deviation from a written, official policy does not prove a conflicting custom or usage"), and *Williams–El v. Johnson,* 872 F.2d 224, 230 (8th Cir.1989) (one occurrence of improper prison guard

hiring contrary to official written policy "does not prove the existence of a" conflicting custom or usage)).

Clearly, Robinson's "proof" fell far short of meeting this standard. In her deposition testimony, she could point to no other specific jailhouse incidents involving Ward, and neither Hoskins nor Green could recall any other allegation of sexual violence in the jail between a jail employee and an inmate, although Green testified that there had been one incident in 1989 or 1990 in which an inmate had sex with another inmate. No proof was ever adduced of a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." *See Ware, supra.* Therefore, Gentry was entitled to summary judgment on this issue as well.

The order of the circuit court is reversed and remanded with instructions to enter judgment consistent with this opinion.

IMBER, J., not participating.