# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3000

_____

Mountain Home Flight Service, Inc.

*Plaintiff - Appellant*

v.

Baxter County, Arkansas; Baxter County Airport Commission; MacMann
Aviation Fueling, LLC; Fly Arkansas, LLC; Charles Hooper; Ira Doug Chatman;
Taylor Scott; County Judge Dan Hall

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - Harrison

_____

Submitted: January 16, 2014
Filed: July 15, 2014

_____

Before GRUENDER, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Mountain Home Flight Service, Inc. (MHFS) brought suit against Baxter
County, Arkansas (the County), the Baxter County Airport Commission
(the Commission), and various related entities and individuals for interfering with its
business operations at the Baxter County Airport. More specifically, MHFS claims

the County and the Commission acted in concert with others to interfere with MHFS's airport operations. In addition to asserting state law breach of contract and tort claims, MHFS brought a § 1983 action alleging that the County and the Commission violated its right to due process. Because MHFS was asserting a federal question, MHFS filed its claims in federal court.[1] The defendants filed motions to dismiss. In response to the defendants' motion to dismiss, the district court[2] dismissed the entire case by (1) granting defendants' motion to dismiss, (2) dismissing an additional claim sua sponte, and (3) declining to exercise supplemental jurisdiction over remaining state law claims. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

In 1992, MHFS signed a lease with the Commission, on behalf of the County, to lease space at the Baxter County Airport to build an aircraft hangar (MHFS hangar) and to provide aircraft-related services, such as aircraft rental, aircraft maintenance, and flight-training at the airport. In its lease, MHFS agreed to abide by "all Minimum Standards and Rules and Regulations prescribed by the Commission." Later, in 1993, the Commission formally adopted "Minimum Standards," which purportedly governed many aspects of MHFS's conduct, including regulating the services offered and requiring approval of the airport manager before MHFS could take certain actions.

---

[1]The district court had jurisdiction to hear the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

[2]The Honorable P. K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

MHFS was not the sole operator at the airport. In 1987, several years before MHFS leased space at the airport, Doyle Linck and Hugh McClain signed a lease (Linck lease) with the County. The Linck lease allowed Linck and McClain to operate a hangar (Linck hangar) that provided competing services and sold aircraft fuel. MHFS was one of Linck's and McClain's fuel customers. In 1994, however, Linck and McClain refused to continue providing fuel to MHFS. MHFS then began its own fuel services in competition with Linck and McClain. In 1996, MHFS acquired the Linck lease, and with it, use of the Linck hangar. While the record is not entirely clear, it appears that from 1996 until at least 2006 MHFS operated both hangars—the Linck hangar and the MHFS hangar—as one combined operation. Throughout this later period, MHFS had no competition at the airport for any of its services.

In 2003, MHFS attempted to divest part of its operation by selling the MHFS hangar to Les Ives for $212,000. The deal fell through because Ives was ultimately unable to perform under the purchase agreement. Nevertheless, MHFS and Ives reached an agreement for Ives to use the MHFS hangar under a month-to-month lease, which he did for a number of years thereafter.

In November of 2004, Dan Hall was elected county judge for Baxter County. Hall then appointed Charles Hooper to act as commissioner of the Baxter County Airport Commission. The relationship between MHFS on the one side and the County and the Commission on the other appears to have deteriorated after Hall and Hooper took office. Nearly all of MHFS's claims relate to actions taken by the County and the Commission while Hall and Hooper were in office. Thus, MHFS's claims against Hall and Hooper as individuals substantially overlap with those against the County and the Commission.

Starting in 2005, County and Commission officials began pursuing additional operators for the airport. In October 2005, MHFS again tried to sell the MHFS

hangar, this time to Chris Freeman for $200,000. The Commission withheld its approval for this sale, which was required under the lease, and the deal fell through. In November 2005, another buyer, Dean Shults, offered to purchase the Linck hangar (and related operations) for $700,000. However, before the sale was finalized Shults withdrew his offer. MHFS blames the Commission for Freeman's and Shults' withdrawals and for its inability to sell its airport operations. MHFS contends that the Commission interfered with the proposed sales because the Commission itself wanted to buy MHFS's operations. After the unsuccessful attempts at a private sale, MHFS offered to sell its combined operation, including both the Linck and MHFS hangars, for $950,000 to the Commission. MHFS notes that it based this valuation on a 2004 appraisal that estimated the combined operation was worth $900,000, and on the Freeman and Shults offers to buy the Linck and MHFS hangars individually, which in combination was a total of $900,000. The Commission responded with a competing appraisal and an offer of $650,000. MHFS rejected this offer.

The Commission also began considering plans to build its own hangar at the Baxter County Airport to compete with MHFS. MHFS also suggests the Commission approached Ives to lease the proposed Baxter County hangar instead of continuing to lease the MHFS hangar. MHFS further suggests the Commission offered Ives lower rent and much more favorable terms, some of which did not comply with the Commission's "Minimum Standards." After some delays, construction of the Baxter County hangar finally began in 2007.

In 2006, the Commission entered an agreement with MacMann Aviation Fuel, LLC, owned by Ira Chatman, to build a competing self-service fuel service station. MHFS objected to this operation, asserting in part that the proposal did not require MacMann to comply with the same "Minimum Standards" MHFS had agreed to in its lease. In 2010, the Commission entered a lease with Fly Arkansas, LLC, a company started by Taylor Scott, to lease a terminal building at the airport. Fly Arkansas was going to start competing with MHFS for fuel sales. Prior to entering

the lease with the Commission, Scott had been a tenant of MHFS, selling his services as a pilot for hire. MHFS alleges Scott used his access to the MHFS facilities to send mailers to all MHFS's customers announcing that Fly Arkansas would now be selling fuel at lower prices than MHFS. According to MHFS, the Fly Arkansas lease, like the MacMann agreement, also violated the "Minimum Standards" that presumably governed the conduct of all businesses operating at the airport.

In February 2012, MHFS filed suit in federal district court alleging the County, the Commission, and various related entities and individuals interfered with its business operations at the Baxter County Airport. In its complaint, MHFS asserts nineteen claims: (1) one claim for breach of contract; (2) twelve claims for tortious interference with a business expectancy, asserting both interference and conspiracy to interfere; (3) two due process claims under 42 U.S.C. § 1983 and two identical state law claims under A.C.A. § 16-123-105; (4) one claim for illegal exaction under A.C.A. § 14-357-105(b); and (5) one claim for violating the Arkansas Open Meetings Act, in violation of A.C.A. § 14-14-119.

The defendants filed motions to dismiss. In response, the district court dismissed the entire case. In doing so, the district court: (1) granted the defendants' motion to dismiss as to the tort claims and civil rights claims; (2) dismissed the breach of contract claim sua sponte; and (3) declined to exercise supplemental jurisdiction over the remaining state law claims. MHFS's contract claim, tort claims, and civil rights claims were all dismissed with prejudice. The district court declined to exercise supplemental jurisdiction over the two remaining state law claims—illegal exaction and violation of the Arkansas Open Meetings Act—and dismissed them without prejudice. MHFS then filed a motion to alter judgment and amend its complaint. The district court denied the motion.

MHFS appeals the merits of the dismissal as well as the denial of its post-dismissal motion to alter judgment and amend its complaint.

## II. Discussion

## A. Motion to Dismiss

We review the grant of a motion to dismiss de novo and construe all reasonable inferences in favor of the nonmoving party. Dunbar v. Wells Fargo, N.A., 709 F.3d 1254, 1256 (8th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

MHFS argues that the district court erred in dismissing its claims for breach of contract, intentional interference with its business relationships, and alleged civil rights violations. In particular, MHFS notes the defendants did not address the substance of the breach of contract claim in their motions to dismiss and suggests it was unfair for the district court to dismiss this claim sua sponte, without prior notice and an opportunity to respond. As for the tort claims alleged, MHFS pursues on appeal only four of the twelve original claims.[3] MHFS maintains that it pled sufficient facts in these four claims, as well as in the due process claims, to survive a motion to dismiss. MHFS also asserts these claims survive the relevant statute of limitations.

---

[3]MHFS originally pled twelve counts of tortious interference and conspiracy to tortiously interfere. MHFS appeals the dismissal of four claims: counts 4–5 and 12–13, abandoning counts 2–3 and 6–11.

The fact that a claim is dismissed sua sponte and without notice does not affect our standard review. Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991). While we have emphasized that "district courts should provide pre-dismissal notice," we have held that sua sponte dismissal, without notice, does not mandate reversal. Id. Thus, as with all other dismissals, we review the complaint de novo to determine whether it states a claim. Id.

The district court did not err in dismissing MHFS's claims. First, MHFS's complaint fails to state a breach of contract claim recognized by Arkansas law. In its complaint, MHFS claims that "Baxter County and The Commission breached [its agreements with MHFS] by breaching their obligation to perform those agreements in good faith." MHFS then provides a list of the ways the County and the Commission acted in bad faith. These allegations are insufficient to state a claim for breach of contract under Arkansas law. The Supreme Court of Arkansas has clarified that Arkansas contract law does not recognize a "separate contract claim for breach of a duty of good faith and fair dealing." Arkansas Research Med. Testing, LLC v. Osborne, 2011 Ark. 158, *6 (Ark. 2011).[4] "[A] breach of the implied covenant of good faith and fair dealing remains nothing more than evidence of a possible breach of a contract between parties." Id. Because MHFS does not allege any breach of contract distinct from the breach of the duty to act in good faith, its claim fails as a matter of law.

Similarly, MHFS failed to plead a viable tort claim. The district court correctly noted that Arkansas does not recognize a "continuing tort" theory, and therefore, for a tort to be actionable, it must have occurred within three years of the complaint. See, e.g., Quality Optical of Jonesboro, Inc. v. Trusty Optical, LLC, 225 S.W.3d 369,

---

[4]While this opinion was not published in the South Western Reporter, it is still precedential under Arkansas Supreme Court Rule 5-2.

372 (Ark. 2006). Almost all of the events discussed in the complaint happened well outside the applicable three-year period.

Of the remaining allegations that do fall within the relevant three-year period, MHFS fails to specify how any defendant's actions were improper as a matter of law. To state a claim for tortious interference with a business expectancy, a plaintiff must first show four elements: (1) a valid business relationship or expectancy; (2) the interfering party has knowledge of the relationship; (3) intentional interference induced a breach of the relationship; and (4) as a result, the plaintiff suffered damage. Stewart Title Guar. Co. v. Am. Abstract & Title Co., 215 S.W.3d 596, 601 (Ark. 2005). If the first four factors are met, then the plaintiff must also show that the interference was improper. Id. To determine if an action is improper, courts consider the following factors:

> (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties.

Id. at 607. MHFS fails to allege sufficient facts to suggest that any of the defendants improperly interfered with its business. The closest MHFS comes to stating a tort claim is when it alleges that Taylor Scott and others intentionally interfered with its business expectancy by "caus[ing] postcards to be mailed to all of MHFS's customers offering to sell them fuel at a lower price." Critically, MHFS fails to allege that this mailing was improper in some way, for example that the customer lists were stolen. Thus, even if we were to assume that such acts were intentional, MHFS fails to state a claim for tortious interference.

The district court also correctly dismissed MHFS's civil rights claims for denial of procedural due process brought under 42 U.S.C. § 1983 and A.C.A. § 16-123-105. MHFS alleges that the actions of the County, the Commission, and related public officials deprived it of its property and liberty without due process of law. "Section 1983 provides a civil action against persons who, under color of law, cause a 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" Hannon v. Sanner, 441 F.3d 635, 636–37 (8th Cir. 2006) (quoting 42 U.S.C. § 1983). Section 1983 does not supply its own statute of limitations; instead, we borrow the statute of limitations from state law. Birmingham v. Omaha Sch. Dist., 220 F.3d 850, 855 (8th Cir. 2000) (citing Wilson v. Garcia, 471 U.S. 261, 279 (1985)). In § 1983 cases arising in Arkansas, the applicable statute of limitations is three years. Id. at 856.

MHFS also asserts analogous state law claims under the Arkansas civil rights statute, A.C.A. § 16-123-105, which is construed to be consistent with § 1983. See generally Gentry v. Robinson, 361 S.W.3d 788 (Ark. 2009) (looking to federal cases construing 42 U.S.C. § 1983 when deciding whether a violation of A.C.A. § 16-123-105 has occurred); Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC, 519 F.3d 466, 474 (8th Cir. 2008). A.C.A. § 16-123-105 does not provide its own statute of limitations. However, this court has previously predicted that the Supreme Court of Arkansas would look to federal cases interpreting § 1983 and likely adopt the same three-year statute of limitations for other similar Arkansas civil rights actions. Med. Liab., 519 F.3d at 474 (reasoning by analogy to A.C.A. § 16-123-105). Given that A.C.A. § 16-123-105 is interpreted with reference to § 1983 cases, we believe the Supreme Court of Arkansas would likely apply the same three-year statute of limitations. Cf. id. at 474–75. Therefore, under both § 1983 and A.C.A. § 16-123-105, the applicable statute of limitations is three years.

Like the district court, we have difficulty ascertaining any property or liberty interest of which MHFS has been deprived, or any process it has been denied,

particularly in light of the dismissal of the breach of contract and tortious interference claims. Furthermore, we note that almost all of the facts alleged to support the procedural due process claims occurred outside the three-year statute of limitations. The only factual allegation within the relevant period is that the Commission entered a lease with defendant Fly Arkansas and that lease did not conform to the "Minimum Standards." What MHFS fails to articulate, however, is how the Commission's decision not to impose the "Minimum Standards" on Fly Arkansas, another party, caused MHFS to suffer a property or liberty deprivation or how this action violated MHFS's procedural due process rights. Accordingly, we affirm the district court's dismissal of the due process claims.

Finally, the district court was within its discretion to decline to exercise supplemental jurisdiction over the two remaining state law claims and dismiss those claims without prejudice. Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." The district court had original jurisdiction over the § 1983 claims. After the § 1983 claims were dismissed, the district court acted within its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims.

## B. Motion to Alter Judgment and Amend the Complaint

While MHFS's motion was styled as a motion to alter judgment under Federal Rule of Civil Procedure 59, this motion was essentially a post-dismissal motion to amend the complaint.[5] We review the denial of a motion for leave to amend for abuse of discretion. United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 829

---

[5]The only ground cited by MHFS for setting aside the prior order was that MHFS had not yet amended its complaint and that MHFS could cure any deficiencies with the proposed amendment.

(8th Cir. 2009).  A motion for leave to amend after dismissal is subject to different considerations than a motion prior to dismissal.  Dorn v. State Bank of Stella, 767 F.2d 442, 443 (8th Cir. 1985).  While "a  party may still file a motion for leave to amend and amendments should be granted liberally, such a motion would be inappropriate 'if the [district] court has clearly indicated either that no amendment is possible or that dismissal of the complaint also constitutes dismissal of the action.'"  Id. (quoting Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, 724 F.2d 1552, 1556 n.6 (11th Cir. 1984)).

"This distinction—between a dismissal of a complaint and a dismissal of an entire action—depends on whether the court intended the dismissal to be a final, appealable order."  Geier v. Missouri Ethics Comm'n, 715 F.3d 674, 677 (8th Cir. 2013) (citing Czeremcha, 724 F.2d at 1555–56).  "[D]ismissing a complaint constitutes dismissal of the action when it states or clearly indicates that no amendment is possible—e.g., when the complaint is dismissed with  prejudice . . . ."  Id. (quotation omitted).  "If, however, the 'order does not expressly or by clear implication dismiss the action,' under Czeremcha, the order only dismissed the complaint, and thus the party may amend under Rule 15(a) with the court's permission."  Id. (quoting Whitaker v. City of Houston, Tex., 963 F.2d 831, 835 (5th Cir. 1992)).

We believe the district court intended to dismiss the entire action.  The court dismissed the first seventeen counts of MHFS's complaint with prejudice, including the § 1983 claims.  With the federal questions dismissed, the district court then declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed these final two claims without prejudice.  See 28 U.S.C. § 1367(c).  While not all the claims were dismissed with prejudice, given the jurisdictional circumstances, we believe the record supports the conclusion that the district court's intent was to dismiss the entire action, rendering the dismissal a final, appealable

order. Thus, we find the district court did not abuse its discretion in denying the motion to amend following its dismissal of the action.

### III. Conclusion

For the reasons stated above, we affirm the district court.

_____