# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3656

_____

Gyronne Buckley

*Plaintiff - Appellant*

v.

Keith Ray, Individually and in his Official Capacity as Agent operating under the authority of the South Central Drug Task Force; Linda Card, Individually and in her Official Capacity as Agent operating under the authority of the South Central Drug Task Force; Richard Wiggins, "Rip" Individually and in his Official Capacity as Agent operating under the authority of the South Central Drug Task Force; Henry Morgan, Individually and in his Official Capacity as a Director of the South Central Drug Task Force; Brent Haltom, Individually and in his Official Capacity as a Director of the South Central Drug Task Force; Taylor King, Individually and in his Official Capacity as a Director of the South Central Drug Task Force; South Central Drug Task Force; Colonel J. R. Howard, Director, Arkansas State Police; Dustin McDaniel, Individually and in his Official Capacity as Attorney General of Arkansas; Brad Phelps, Individually and in his Official Capacity as Assistant Attorney General; Edward Armstrong, Individually and in his Official Capacity as Assistant Attorney General; Will Jones, Individually and in his Official Capacity as Assistant Attorney General; Jeff B. Sessions,[1] in his Official Capacity as Attorney General of the United States

*Defendants - Appellees*

_____

_____

[1]At the time this case was submitted, then-Attorney General Loretta E. Lynch was the defendant listed in this caption. Jeff B. Sessions has been automatically substituted for her under Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

SHEPHERD, Circuit Judge.

Gyronne Buckley brought this suit under 42 U.S.C. § 1983 alleging violations of his constitutional and statutory rights by the South Central Drug Task Force, several of its members and directors, certain Assistant Attorneys General of Arkansas, and the Attorney General of Arkansas. He also sought certification of a class action suit against the United States Attorney General on behalf of African-Americans in Arkansas subjected to equal protection and due process violations. The district court[2] granted summary judgment to all defendants. We affirm.

## I. Background

### A. Facts

In May of 1999, Gyronne Buckley was convicted of two counts of delivery of a controlled substance and sentenced to life imprisonment, subsequently reduced to 56 years. His arrest and conviction were the result of a "controlled drug buy" operation orchestrated by the South Central Drug Task Force. Agents Keith Ray and

_____

[2]The Honorable James M. Moody Jr., United States District Judge for the Eastern District of Arkansas.

Linda Card, investigators in the Drug Task Force, used a police informant to approach Buckley and buy rocks of crack cocaine from him. The informant later testified against Buckley at trial.

During his state post-conviction appeal, Buckley learned of a video-recorded, pre-trial interview between the informant and Agents Ray and Card. The video showed Agent Ray coaching the informant on how to present his testimony in the trial against Buckley. The agents had never told state prosecutors about the existence of the video. Buckley's attorney repeatedly sought to obtain the video during his post-conviction appeal. He was unsuccessful in doing so, and Buckley's post-conviction appeal was likewise unsuccessful.

Buckley only received a copy of this video as the result of a United States District Court order in his federal habeas proceeding. The district court then held his habeas petition in abeyance to permit Buckley's return to state court. The Arkansas Supreme Court granted Buckley's motion for leave to reopen his case based on the previously undisclosed video. Buckley alleged that suppression of the video violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963). The trial court agreed and vacated his conviction on November 1, 2010. The charges against him were dismissed by court order on December 6, 2010.

Buckley thereafter moved to have the record in his case sealed pursuant to Arkansas Code Annotated § 16-90-905. The Clark County Circuit Court ordered the record sealed on April 12, 2012. The expungement statute, as it existed in 2012, stated that:

> Any individual who has been charged and arrested for any criminal offense where the charges are subsequently nolle prossed or dismissed or the individual is acquitted at trial is eligible to have all arrest records, petitions, orders, docket sheets, and any other documents relating to the case expunged in accordance with the procedures defined by this

-3-

subchapter and upon entry of an order of expungement may state that no such charges, arrest, and the resulting trial ever occurred.

Ark. Code Ann. § 16-90-906.

On March 9, 2013, Buckley filed a claim with the Arkansas State Claims Commission seeking compensation for his wrongful conviction and years of incarceration. The Arkansas General Assembly created the Claims Commission, which consists of five commissioners, two of whom must be attorneys. See id. § 19-10-201(a)(1). Each commissioner is appointed by the governor and confirmed by the senate. Id. § 19-10-201(a)(2). With limited exceptions, the Claims Commission has "exclusive jurisdiction over all claims against the State of Arkansas and its several agencies, departments, and institutions . . . ." Id. § 19-10-204(a). Any party pursuing such a claim must file a complaint with the Commission; the State of Arkansas is designated as the respondent. See id. § 19-10-208(a). The commissioners then hold a public hearing, "giving the parties full opportunity for presentation of evidence, cross-examination of witnesses, and argument." Id. § 19-10-210(b)(1). When the Commission issues a final decision on a claim, it supports that decision with specific findings of fact and conclusions of law. Id. § 19-10-216(a)(1). "A decision of the Arkansas State Claims Commission may be appealed only to the General Assembly." Id. § 19-10-211(a); see also Fireman's Ins. Co. v. Ark. State Claims Comm'n, 784 S.W.2d 771, 775 (Ark. 1990) ("The act creating the Claims Commission clearly creates it as an arm of the legislature, reporting solely to that body."). The appeal is filed with the Commission, which then notifies the Arkansas Legislative Council of the appeal. Ark. Code Ann. § 19-10-211(c).

Prior to the Commission's evidentiary hearing, Arkansas Assistant Attorneys General Brad Phelps, Edward Armstrong, and Will Jones accessed the records from Buckley's trial. Armstrong and Jones then appeared before the Commission to represent the State's interests. Armed with information gleaned from the sealed

-4-

records, they argued that Buckley could not prove his actual innocence of the charges. After the hearing, the Commission recommended Buckley receive $460,000 in compensation.

The State Attorney General's office appealed the Commission's decision, and the appeal was heard at a hearing of the Claims Review Subcommittee of the Arkansas Legislative Council. See id. § 10-3-313. Dustin McDaniel, then Arkansas's Attorney General, appeared before the subcommittee in opposition to Buckley's awarded compensation. He contended that Buckley had not established his innocence. McDaniel also referenced an audio tape of the controlled drug buy and claimed that Buckley used the phrase "killing Whitey" on the tape. McDaniel later admitted he erred in attributing those words to Buckley.

The subcommittee voted unanimously to deny Buckley compensation.

## B. Procedural History

Buckley filed his original complaint on December 5, 2014. He subsequently filed an amended complaint on February 10, 2015. His amended complaint stated claims against three principal groups of defendants. First, he asserted § 1983 claims arising out of his wrongful conviction, naming the following defendants: the South Central Drug Task Force; Agents Ray[3] and Card; their supervising agent, Agent Richard "Rip" Wiggins; directors of the Task Force Henry Morgan, Taylor King, and Brent Haltom; and the Director of the Arkansas State Police, Colonel J.R. Howard[4] (collectively the "Law Enforcement Defendants"). The claims against the Law

---

[3]Buckley was never able to locate or serve process on Agent Ray. The district court, therefore, dismissed the claims against Ray on November 6, 2015.

[4]Colonel J.R. Howard is no longer the Director of the Arkansas State Police. Colonel William J. Bryant was appointed as Director in January 2015.

Enforcement Defendants pertain to the <u>Brady</u> violation committed by Agents Ray and Card in 1999. Buckley's <u>Brady</u> claims against the Task Force, its directors, and the Director of the Arkansas State Police center on a failure to supervise Agents Ray and Card.

Second, Buckley asserted due process claims against Arkansas Attorney General McDaniel and Assistant Attorneys General Armstrong, Jones, and Phelps (collectively the "AG Defendants"). These due process claims arose out of the access and use of Buckley's sealed trial records before the Claims Commission and legislative subcommittee. In addition, Buckley stated a state-law defamation claim against Attorney General McDaniel for his comments made to the legislative subcommittee.

Third, Buckley sought class certification for a suit naming the United States Attorney General[5] as a defendant. The basis for this proposed class action lay in purported violations of equal protection and due process against African-American defendants in Arkansas by the state criminal justice system. Buckley requested an order enjoining the Attorney General from awarding federal money to Arkansas law enforcement agencies. Buckley also sought an order compelling the Attorney General to investigate claims of racial bias in the Arkansas criminal justice system.

The district court, in two separate orders, dismissed Buckley's claims against all defendants. The first order addressed the claims made against the AG Defendants. The district court held that the AG Defendants were entitled to qualified immunity as to Buckley's § 1983 claims against them. Alternatively, the court found that the defense of absolute quasi-judicial immunity applied. Regarding the state-law

---

[5]The amended complaint named then-Attorney General Eric Holder as a defendant in his official capacity. Jeff B. Sessions has been automatically substituted for him pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

defamation claim against McDaniel, the district court ruled that the defamatory statement, made in a judicial or quasi-judicial proceeding, was privileged. Additionally, the district court dismissed all claims against Assistant Attorney General Phelps for failure to set forth any facts that could support a claim of entitlement to relief.

In the district court's second order, it dismissed claims against the Law Enforcement Defendants as barred by the statute of limitations. The court also dismissed sua sponte all claims against the United States Attorney General on the same grounds. Buckley now appeals both of the district court's dismissal orders.

A district court's order granting a motion to dismiss is reviewed de novo. Mountain Home Flight Serv., Inc. v. Baxter Cnty., 758 F.3d 1038, 1042 (8th Cir. 2014). We construe all reasonable inferences in favor of Buckley as the nonmoving party. Id.

## II. Due Process Claims Against the AG Defendants

Buckley alleges that the AG Defendants violated his due process rights when they accessed his sealed trial records. His amended complaint reads, "Defendants McDaniel, Phelps, Armstrong and Jones violated Plaintiff's right to due process of law under the Fourteenth Amendment when they violated Arkansas law in referring to and relying on matters previously subject to the expungement of records arising from the prosecution and conviction of [Buckley]." (J.A. 64.) The complaint further avers that the AG Defendants violated his "right to rely on the statutory provisions protecting him from unlawful disclosures" of his sealed records. (J.A. 67.) The AG Defendants freely admit that they reviewed Buckley's trial records and relied on them during their testimony before the Claims Commission. (Appellee Br. 12.)

-7-

The district court interpreted Buckley's amended complaint to contain two separate claims against the AG Defendants in their individual capacities.[6] First, accessing the expunged trial records constituted a substantive due process violation under the Fourteenth Amendment. Second, the AG Defendants violated Buckley's right to procedural due process safeguards, since the Arkansas expungement statute allegedly created a constitutional right. Regarding Buckley's first claim, the district court explained, "Actionable substantive due process claims involve a level of . . . abuse of power . . . so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency." Avalos v. City of Glenwood, 382 F.3d 792, 800 (8th Cir. 2004) (alteration in original) (citations and internal quotation marks omitted). The court then held that accessing Buckley's sealed records failed to fall within the scope of a § 1983 claim, citing without comment our decision in Hart v. City of Little Rock, 432 F.3d 801 (8th Cir. 2005). Turning to Buckley's second claim, the district court noted that Buckley had failed to offer any caselaw holding that the Arkansas expungement statute created a cause of action, much less a constitutional right. The district court therefore found that qualified immunity protected the AG Defendants.

## A. Qualified Immunity

Qualified immunity shields officers from liability "unless [their] conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Shekleton v. Eichenberger, 677 F.3d 361, 365 (8th Cir. 2012) (internal quotation marks omitted) (quoting Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments . . . ." Ashcroft v. al-

---

[6]The district court dismissed the § 1983 claims against the AG Defendants in their official capacities because such claims are barred, either by the Eleventh Amendment or because in these capacities they are not "persons" for § 1983 purposes. See Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997). Buckley has not appealed this ruling by the district court.

Kidd, 563 U.S. 731, 743 (2011). "The determination of whether an officer is entitled to qualified immunity requires consideration of the 'objective legal reasonableness' of the officer's conduct in light of the information he possessed at the time of the alleged violation." Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)).

Courts conduct a two-part inquiry to determine whether qualified immunity protects a government official from liability: (1) whether the facts taken in a light most favorable to Buckley make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the alleged violation. Truong v. Hassan, 829 F.3d 627, 630 (8th Cir. 2016). We have discretion in deciding which part of the inquiry to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

## B. Substantive Due Process Claim

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the 'contemporary conscience.'" Truong, 829 F.3d at 631 (quoting Flowers v. City of Minneapolis, 478 F.3d 869, 873 (8th Cir. 2007)). The "shocks-the-conscience" test presents a high bar for Buckley to reach. His claim against the AG Defendants must involve conduct "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Id. (quoting Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002)). In a case such as this, in which actual deliberation was practical, Buckley must also prove that the AG Defendants acted with deliberate indifference to the effect their conduct would have on him. See

Terrell v. Larson, 396 F.3d 975, 980-81 (8th Cir. 2005) (en banc). Determining whether state officials acted with deliberate indifference "demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 850 (1998).

In his brief, Buckley presents the issue as a question of whether the AG Defendants acted within the realm of "fair play and decency." (Appellant Br. 21 (citing Avalos, 382 F.3d at 800).) He contends that accessing and referencing his expunged criminal record constituted unfair play and indecency. This contention goes unsupported by any citation to caselaw or treatise. In effect, Buckley argues that the mere act of violating a state's expungement statute amounts to a brutal and inhumane abuse of official power literally shocking to the conscience.

We cannot accept Buckley's argument. Seeking compensation for time spent in prison, he had brought a claim to the Claims Commission. Buckley himself placed his conviction, and his underlying conduct, at issue in the Commission's proceedings. The AG Defendants represented the State's interests before the Commission. See Ark. Code Ann. § 25-16-702(a). As part of their representation, they accessed the records from Buckley's 1999 conviction. They then used those records to argue before the Commission that Buckley had failed to show his actual innocence of the crimes. While the Commission did not agree, the legislative subcommittee ultimately did, and Buckley's claim was denied.

None of the actions taken by the AG Defendants amount to a brutal abuse of power. Using the trial records of an individual seeking compensation for the time he spent in prison, when that individual has placed his conduct and conviction at issue, does not shock the conscience. The AG Defendants acted reasonably, particularly in light of Arkansas caselaw allowing the use of expunged records to impeach testimony when the actual innocence of the witness has not been shown. See Wal-Mart Stores, Inc. v. Regions Bank Trust Dept., 69 S.W.3d 20, 27-28 (Ark. 2002). The Arkansas

expungement statute offered Buckley a shield; but he asks to use it as a sword, commanding the AG Defendants to sit idly by and do nothing to defend the State before the Claims Commission. That is unreasonable. Since the AG Defendants' conduct fails to shock the conscience, no substantive due process violation occurred. We next turn to Buckley's procedural due process claim.

## C. Procedural Due Process Claim

Buckley's second claim against the AG Defendants alleges a violation of procedural due process. Buckley asserts that "these Defendants either knew or should have known that their actions in violating the terms of the liberty and privacy interests created by the Arkansas expungement statute would violate Buckley's right to due process." (Appellant Br. 26.) To state Buckley's argument more clearly, the expungement statute creates privacy and liberty interests entitled to procedural due process protection. The AG Defendants, according to Buckley, breached this protection when they accessed records from his expunged conviction without affording him due process. The expungement statute, therefore, serves as the basis for this cause of action, unlike Buckley's substantive due process claim. Cf. Davis v. Scherer, 468 U.S. 183, 194 n.12 (1984) ("Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon.").

"[S]tate statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." Green v. Dormire, 691 F.3d 917, 921 (8th Cir. 2012) (alteration in original) (internal quotation marks omitted) (quoting Vitek v. Jones, 445 U.S. 480, 488 (1980)). If a state statute has created a liberty interest, federal law establishes the minimum requirements of due process. Id.; Anderson v. Romero, 72 F.3d 518, 527 (7th Cir. 1995) ("[T]he

source of the entitlement is a state statute; federal law merely protects him against having his entitlement taken away from him without due process of law.").

Buckley fails to articulate any legally-cognizable liberty interest created by the Arkansas expungement statute. He contends that the Arkansas expungement statute creates "liberty and privacy interests." But he offers no elaboration on what those interests may be, beyond his assertion that the statute "protect[s] him from unlawful disclosures" of his expunged records. We have previously analyzed the provisions of Arkansas's expungement statute and held that they do not create a liberty interest. Eagle v. Morgan, 88 F.3d 620, 626 (8th Cir. 1996). At that time, we observed that the state legislature does not "possess the Orwellian power to permanently erase from the public record those affairs that take place in open court." Id. Accordingly, Buckley had no state-created liberty interest for the AG Defendants to violate. With no other liberty interest identified, no constitutional violation could have occurred. We therefore affirm the district court's ruling—qualified immunity protects the actions taken by the AG Defendants.[7]

### III. Defamation Claim Against Attorney General McDaniel

Buckley asserts a separate, state-law defamation claim against Attorney General McDaniel. This claim centers on the testimony McDaniel offered to the legislative subcommittee in which he claimed an audiotape existed of Buckley using the phrase "killing Whitey" during one of the controlled drug buys. Buckley claims

___

[7]Because qualified immunity applies, we do not address the district court's holding that quasi-judicial immunity also protects the AG Defendants. We also need not address the district court's dismissal of the claims against Assistant Attorney General Phelps for failure to set forth any facts that could raise a claim of entitlement to relief. Whatever actions, if any, Phelps may have taken regarding Buckley's expunged record, they are protected by qualified immunity.

-12-

McDaniel's statement defamed him and he seeks damages of $920,000. We have diversity jurisdiction over this claim under 28 U.S.C. § 1332.[8]

The district court dismissed the state-law claim against McDaniel because, it reasoned, McDaniel's allegedly defamatory statement was privileged. "We may affirm on any basis supported by the record." Green Tree Servicing, LLC v. DBSI Landmark Towers, LLC, 652 F.3d 910, 913 (8th Cir. 2011) (quoting Schoelch v. Mitchell, 625 F.3d 1041, 1046 (8th Cir. 2010)). We hereby affirm the district court's dismissal of the defamation claim on the alternative grounds of absolute legislative immunity.

Legislative immunity "attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). The decision of a legislature on how to spend public money is, in its very nature, a legislative act. Accord Bogan, 523 U.S. at 55-56 ("a discretionary, policymaking decision implicating . . . budgetary priorities" is a legislative activity). "A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding." Restatement (Second) of Torts § 590A (1977); see also Valor Healthcare, Inc. v. Pinkerton, 620 F. Supp. 2d 974, 980 (W.D. Ark. 2009) ("Individuals must be able to testify to the legislature about matters of public concern without the prospect of a defamation claim."). Attorney General McDaniel testified before the legislative subcommittee concerning a legislative matter. Therefore, we find that absolute legislative immunity protects his allegedly defamatory statement.

---

[8]Buckley was a resident of the State of Texas at the time suit was brought. McDaniel is a resident of Arkansas.

Buckley raises two objections to this conclusion: First, that the application of legislative immunity to Buckley's claim contradicts warnings from the Supreme Court on the unjustified expansion of immunity theories in § 1983 litigation. His concern is unwarranted. Buckley's defamation claim is a state-law claim brought under diversity jurisdiction and is not part of his § 1983 claims. Even if it were, the Supreme Court has already recognized the defense of absolute legislative immunity in § 1983 litigation. See Bogan, 523 U.S. at 49. Second, Buckley opines that such a ruling would permit legal officers of the state to defame anyone with impunity. This argument is without merit. Our ruling immunizes officials only in the limited context of testimony before a legislative body. It says nothing about the liability of officials for making defamatory statements in any other context.

IV. Claims Arising out of the 1999 Brady Violation

Several claims in Buckley's lawsuit, made individually and collectively against the Law Enforcement Defendants, relate to the Brady violation committed during his 1999 trial. He brought these claims under 42 U.S.C. § 1983 for violations of his rights to due process of law and equal protection under the Fourteenth Amendment. But the district court never reached the merits of these claims. Rather, it found that the applicable statute of limitations bars Buckley from proceeding against the Law Enforcement Defendants.

It is undisputed that the statute of limitations for Buckley to bring a § 1983 claim is three years. See Miller v. Norris, 247 F.3d 736, 739 (8th Cir. 2001) (Arkansas's three-year statute of limitations for personal injuries applies to § 1983 claims). The district court held that Buckley's conviction was the source of his injury. The court's rationale rested on the observation that had Buckley been acquitted in his 1999 trial, there would have been no constitutional violation, since he would have suffered no damages. The statute of limitations, therefore, began to run on November 1, 2010—when the trial court vacated his conviction due to the

Brady violation. The limitations period ended on November 1, 2013, rendering Buckley's December 5, 2014 suit time-barred.

Buckley objects to this holding because he remained in jeopardy of being tried again for the cocaine charges after November 1, 2010. Following the trial court's vacation of Buckley's conviction, prosecutors dismissed the charges against him by nolle prosequi on December 6, 2010. Under Arkansas law, "It is well settled that dismissal of a charge by nolle prosequi does not bar a subsequent prosecution for the same offense." State v. Crawford, 281 S.W.3d 736, 739 (Ark. 2008) (citing Ark. Code Ann. § 16-89-122). Both parties agree that Buckley escaped jeopardy only on December 6, 2011—one year after the nolle prosequi dismissal of the charges against him. See Ark. Code Ann. § 16-90-1410. Buckley argues that he could not have brought suit on his Brady claims until that day because to do so earlier would have risked a civil tort verdict calling into question a subsequent criminal conviction. See Heck v. Humphrey, 512 U.S. 477, 484 (1994). The district court's ruling, under Buckley's theory, raised this very possibility. He asserts that the statute of limitations, therefore, did not start running until December 6, 2011, thus placing his December 5, 2014 suit within the limitations period.

The key question before us is when does a cause of action under § 1983 for a Brady violation accrue? In Heck, the Supreme Court held that a cause of action for unconstitutional conviction, imprisonment, or other harms "caused by actions whose unlawfulness would render a conviction or sentence invalid," does not arise until the underlying conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The Court created this rule, in part, to avoid parallel litigation where a civil verdict and criminal conviction, concerning the same transaction, contradict each other. Id. at 484. The Supreme Court, however, has further clarified its Heck holding in Wallace v. Kato, 549 U.S. 384 (2007). In Wallace, the Court expressly refused to hold that "an action which

would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." Id. at 393. Rather, the Heck rule applies only when there exists a conviction or sentence that has *not* been invalidated. Id. Otherwise, the traditional rule holds: a cause of action accrues "when the wrongful act or omission results in damages." Id. at 391 (citations and internal quotation marks omitted).

The Supreme Court's decision in Wallace controls Buckley's claim. The trial court invalidated Buckley's 1999 conviction on November 1, 2010. No extant conviction exists for his § 1983 claims to impugn. The possibility that the State may have re-tried and convicted him of the cocaine charges—"*an anticipated future conviction*"—does not implicate the Heck rule. See id. at 393. Buckley directs the court to a number of decisions from other circuits for the proposition that "so long as success on [a § 1983 claim] would necessarily imply the invalidity of a conviction in the pending criminal prosecution, such a claim does not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist." Smith v. Holtz, 87 F.3d 108, 113 (3d Cir. 1996); see also Wolfe v. Perry, 412 F.3d 707, 714 (6th Cir. 2005) (same); Covington v. City of New York, 171 F.3d 117, 124 (2d Cir. 1999) (same). But all of these cases came before the Supreme Court decided Wallace in 2007. In fact, the Third Circuit has expressly recognized that Wallace abrogated its decision in Smith. See Woodson v. Payton, 503 Fed. App'x 110, 112 (3d Cir. 2012) (per curiam). We therefore do not find the cases cited by Buckley compelling or their rationale applicable.

The Brady violation committed against Buckley by the Law Enforcement Defendants caused him damage when he was convicted and incarcerated in 1999. The trial court vacated his conviction on November 1, 2010. That is the date on which his cause of action accrued. The limitations period on Buckley's claims, in accordance with Arkansas law, ended on November 1, 2013. His claims against the Law Enforcement Defendants, filed over a year later, are time-barred.

In the same order dismissing the claims against the Law Enforcement Defendants, the district court also dismissed Buckley's claims against the United States Attorney General sua sponte.[9] The court held that the claims against the Attorney General were barred by the statute of limitations, just as the claims against the Law Enforcement Defendants were. We affirm.[10]

---

[9]We have previously held "that a district court sua sponte may dismiss a complaint under Rule 12(b)(6) as long as the dismissal does not precede service of process." Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991). The district court noted that the Attorney General was served on April 6, 2015. The district court issued its order on September 28, 2015. In his brief, Buckley suggests that service of process was improperly completed according to Rule 4(i)(1)(A) of the Federal Rules of Civil Procedure. He cites no caselaw to support the proposition that improper service affects our holding in Smith. We therefore affirm the right of the district court to dismiss sua sponte the claims against the Attorney General.

[10]Buckley argues in his reply brief that his claims against the United States Attorney General also included a request for injunctive relief as to ongoing acts of the Attorney General based on due process and equal protection concerns. These claims, according to Buckley, should not be dismissed on statute-of-limitations grounds. Though Buckley is correct on this narrow point, we hold that he does not have standing to seek injunctive relief on the claims asserted. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). A plaintiff seeking injunctive relief must show the he "will again be wronged in a similar way." Id. at 111. The "threatened injury must be *certainly impending* to constitute injury in fact." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)). Buckley fails to show that future harm to him is certainly impending. Taking his allegations of racial bias and false testimony as true, he has not shown a likelihood of repetition. We therefore hold that Buckley lacks standing to seek injunctive relief from the United States Attorney General.

## V. Conclusion

For the foregoing reasons, we affirm the opinion of the district court dismissing Gyronne Buckley's claims.

_____